UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAYAN LLC,

        Plaintiff,

        -against-

ALL THE WAY UP, LLC and SCOTT SPINA,

        Defendant.

Civil Action No.: 1:17-cv-01156

**COMPLAINT**

---

Plaintiff Cayan LLC ("Cayan" or "Plaintiff"), by and through its attorneys, for its Complaint against Defendants All The Way Up, LLC ("All The Way Up") and Scott Spina, ("Spina") (collectively referred to as "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for damages in connection with Plaintiff's claims for fraud, breach of contract, unjust enrichment, negligent supervision, and violation of the RICO Act. The claims all stem from Defendants' fraudulent scheme of making unauthorized charges on their customers' credit cards, illegally retaining the fraudulently obtained funds paid to Defendants as a result of those charges, and refusing to pay the chargebacks incurred by Cayan after the unauthorized charges were reversed.

2. Cayan provided credit card processing services to All The Way Up pursuant to a Merchant Processing Application and Agreement (the "Agreement"), which incorporates by reference the Merchant Services Program Guide containing the terms and conditions of the Agreement (collectively, the "MPA"). Cayan and All The Way Up executed the MPA on September 29, 2016.

3. Cayan licensed certain processing hardware and gateway payment processing services pursuant to a Platform Agreement (the "Platform Agreement"), which was executed by Cayan and All the Way Up on September 29, 2016.

4. Under the MPA, Cayan agreed to process and settle charges from legitimate credit

card and debit card customers. In the event unauthorized or fraudulent charges were made and the charges were reversed after Cayan settled a transaction ("chargebacks"), the MPA requires those chargebacks be assessed against All The Way Up and any damages caused by such chargebacks be repaid by All The Way Up. The MPA also contains a personal guarantee by Spina (the "Guarantee") for full payment and performance of All The Way Up's obligations under the MPA.

5. Plaintiff is informed and believes that All The Way Up and/or Spina took confidential credit card information of certain cardholders (the "Cardholders") collected from valid sales to customers and other means, and then used that information to make unauthorized charges to those Cardholders' credit cards. At the time of this filing, Cayan has identified a series of at least 30 separate, unauthorized transactions from December 2016 and January 2017 that were charged to multiple Cardholders through All The Way Up's processing account with Cayan ("Account"). All The Way Up and/or Spina processed charges that were not authorized by these Cardholders.

6. Plaintiff processed those charges before becoming aware that the charges were, in fact, unauthorized. The Cardholders reported these unauthorized charges to their credit card companies. All The Way Up and/or Spina further attempted to conceal their fraudulent activity, but upon investigation by the credit card companies, the charges were reversed. Once the chargebacks were charged to Plaintiff, it contacted Defendants, who refused to repay Cayan for the chargebacks and have continued to retain the money they fraudulently obtained.

## PARTIES

7. Plaintiff Cayan is a limited liability company organized under the laws of the state of Delaware and, at all relevant times, has had its principal place of business in Boston, Massachusetts.

8. Plaintiff is informed and believes that Defendant All The Way Up is a limited liability company organized under the laws of the state of New York and, at all relevant times, has had its principal place of business in New York, New York.

9.     Plaintiff is informed and believes that Defendant Scott Spina was the co-owner and/or employee of Defendant All the Way Up, and, at all relevant times, has resided in Bloomfield, New Jersey.

## JURISDICTION AND VENUE

10.    There is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

11.    Venue is proper within this District pursuant to 28 U.S.C. § 1391(b)(2).

## FACTS

12.    Cayan incorporates by reference as if fully set forth herein each of its allegations set forth above in Paragraphs 1 to 11.

13.    Plaintiff Cayan is a leading provider of payment technology products and services, including payment processing services as an independent sales organization of its processor and sponsor bank.

14.    Plaintiff is informed and believes that Defendant All The Way Up operates a New York-based retail store, UP NYC, which sells high-end, exclusive athletic shoes and apparel.

15.    On September 29, 2016, All The Way Up executed two agreements with Cayan, the Platform Agreement and the MPA.

16.    Spina signed both agreements on behalf of All The Way Up. Spina represented that he was authorized to enter into both agreements as co-owner of All The Way Up.

17.    Under the Platform Agreement, All The Way Up licensed payment processing hardware and software and gateway processing services from Cayan.

18.    Pursuant to the MPA, Cayan agreed to provide credit and debit card processing services in exchange for, among other charges, a per-transaction fee, which was accordingly deducted from All The Way Up's transactions before the funds were transferred to All The Way Up.

19.    All The Way Up agreed to certain terms and conditions for processing payments under the MPA, including terms dealing with fees, discount rates, and chargebacks from various

banks and credit card companies.

20. Cayan generally uses credit card information to process transactions through a payment processor, sponsor bank, and the entity that issued the card in order to confirm that the card holder has sufficient credit (for a credit card) or funds (for a debit card) to pay the customers' purchase from All The Way Up. If credit or funds are available, the transaction amount, through Cayan and its intermediaries, is processed by debiting the cardholder's account and is credited, after the processing of fees under the MPA and Platform Agreement to All The Way Up's settlement account (the "Settlement Account").

21. UP NYC began conducting business on or around November 5, 2016 and at that time used Cayan's processing services.

22. Plaintiff is informed and believes that from on or around December 8, 2016 through January 9, 2016, Spina and/or All The Way Up retained credit card information from the Cardholders, including information from valid sales made at UP NYC.

23. Plaintiff is informed and believes that Spina and/or All The Way Up subsequently manually keyed or otherwise processed at least 30 unauthorized charges on credit cards of those Cardholders, at least one of whom was out of state, using All The Way Up's Account.

24. Spina's unique user identification credentials were used for each of these 30 transactions.

25. All of these 30 transactions were conducted over the internet and the IP addresses associated with the majority of these 30 transactions originated in the proximity of a physical address affiliated with Spina.

26. The transactions were authorized and processed through All The Way Up's Settlement Account before they were reversed and Cayan became aware that the charges were, in fact, unauthorized. The monies from those charges were credited to All The Way Up's Settlement Account and promptly removed by Defendant(s).

27. The Cardholders then reported these unauthorized charges to their credit card companies and, after investigation by the credit card companies, the transactions were reversed.

28. When the chargebacks from these unauthorized, fraudulent transactions reached Cayan, it contacted Defendants, who refused to pay the chargebacks as required under the terms of the MPA.

29. Cayan established a reserve account, which it was explicitly permitted to open under the MPA, and diverted certain settlement funds to cover any potential chargebacks on All The Way Up's Account.

30. However, the volume of chargebacks from the unauthorized charges far exceeded the amount in the reserve account, leaving at least $318,815.45 in unpaid chargebacks.

31. The MPA requires All The Way Up to repay any chargebacks, including chargebacks for unauthorized, fraudulent activity.

32. Thus, All The Way Up has breached the MPA by failing to repay the chargebacks.

33. All The Way Up has also breached the MPA by exceeding the permissible percentage of "card not present sales" (*i.e*., sales transacted through means of the mail, telephone, internet, or otherwise manually keyed in without the physical card being presented) it may make in any given month.

34. All The Way Up has also made numerous representations and warranties pursuant to the MPA, including that: (A) "each Card transaction is genuine and arises from a bona fide transaction"; (B) it has "no knowledge or notice of any fact, circumstance or defense which would indicate that such Card transaction is fraudulent or not authorized by the related Cardholder or which would otherwise impair the validity or collectability of that Cardholder's obligation"; (C) it has "completed one Card transaction per sale; and (D) "each statement made on the Application or other information provided to us in support of this Agreement is true and correct."

35. All The Way Up has breached each of the above-referenced MPA representations and warranties.

36. Spina has also breached the MPA by failing to repay the chargebacks, as he has

personally, unconditionally, and irrevocably guaranteed the full payment and performance of All The Way Up's obligations under the MPA.

37. The MPA clearly states, and Spina expressly agreed, that Cayan is not required to first proceed against All The Way Up to enforce any remedy before proceeding against Spina under the Guarantee.

38. Moreover, the MPA states the Guarantee is continuing in nature and cannot be discharged or affected for any reason.

## COUNT I:  FRAUD
### (Against All Defendants)

39. Cayan incorporates by reference as if fully set forth herein each of its allegations set forth above in Paragraphs 1 to 38.

40. At the time of this filing, Cayan has identified at least 30 transactions, between December 8, 2016 and January 9, 2016, wherein All The Way Up and/or Spina intentionally misrepresented that transactions were valid and authorized by customers when they were in fact unauthorized and fraudulent.

41. All The Way Up and/or Spina intended to deceive Cayan by submitting these charges, causing Cayan to be damaged by the chargebacks after the sale proceeds were debited to All The Way Up's Settlement Account and withdrawn by All the Way Up and/or Spina.

42. Cayan had a right to rely on All The Way Up and/or Spina's representations that these were not fraudulent transactions, as required for valid, covered transactions under the MPA.

43. When Cayan became aware the charges were reported as unauthorized by Cardholders, investigated by the relevant credit card companies, and charged back, it contacted Defendants, who refused to pay the chargebacks.

44. Cayan is informed and believes that All The Way Up and/or Spina have these illegally obtained funds in their possession.

45. Cayan has been damaged by Defendants' actions as it has been forced to bear the

damages caused by the chargebacks.

## COUNT II: BREACH OF CONTRACT
### (Against All The Way Up)

46. Cayan incorporates by reference as if fully set forth herein each of its allegations set forth above in Paragraphs 1 to 45.

47. The MPA constitutes a valid and binding written contract.

48. Cayan has fully complied with its obligations under the MPA.

49. The MPA requires All The Way Up to repay any chargebacks resulting from transactions on its Account, including chargebacks for fraudulent activity. Thus, All The Way Up is in breach of the MPA for failure to repay the chargebacks.

50. All The Way Up has also breached the MPA by exceeding the permissible percentage of "card not present sales" (*i.e.*, sales transacted through means of the mail, telephone, internet, or otherwise manually keyed in without the physical card being presented) it may make in any given month.

51. All The Way Up has also breached its representations and warranties under the MPA that: (A) "each Card transaction is genuine and arises from a bona fide transaction"; (B) it has "no knowledge or notice of any fact, circumstance or defense which would indicate that such Card transaction is fraudulent or not authorized by the related Cardholder or which would otherwise impair the validity or collectability of that Cardholder's obligation"; (C) it has "completed one Card transaction per sale"; and (D) "each statement made on the Application or other information provided to us in support of this Agreement is true and correct."

52. As a direct and proximate result of All The Way Up's conduct, Cayan has been damaged.

53. Pursuant to the MPA, All The Way Up owes Cayan full payment for the damages caused by the remaining chargebacks, including fees and interest, as set forth in the MPA.

## COUNT III: BREACH OF CONTRACT
### (Against Spina)

54. Cayan incorporates by reference as if fully set forth herein each of its allegations

set forth above in Paragraphs 1 to 53.

55. The MPA constitutes a valid and binding written contract.

56. Cayan has fully complied with its obligations under the MPA.

57. The MPA requires All The Way Up to repay any chargebacks resulting from transactions on its Account, including chargebacks for fraudulent activity.

58. All The Way Up has refused to pay the damages caused by chargebacks on its Account.

59. Spina personally, unconditionally, and irrevocably guaranteed the full payment and performance of All The Way Up's obligations under the MPA.

60. Spina has refused to repay the damages caused by the chargebacks on its Account.

61. Spina has breached the agreement by failing to repay the damages caused by the chargebacks.

62. As a direct and proximate result of Spina's conduct, Cayan has been damaged.

63. Spina owes Cayan full payment for the damages caused by the remaining chargebacks, including fees and interest, as set forth in the MPA.

### COUNT IV:  UNJUST ENRICHMENT
### (Against All Defendants)

64. Cayan incorporates by reference as if fully set forth herein each of its allegations set forth above in Paragraphs 1 to 63.

65. Defendants have been unjustly enriched by making unauthorized, fraudulent credit card transactions, retaining the funds that Cayan unwittingly instructed to be paid into All The Way Up's Settlement Account upon Defendants' representations that the transactions were valid, and thereafter refusing to repay Cayan for the damages caused by the chargebacks once the transactions were reported as unauthorized by the Cardholders, investigated by the relevant credit card companies, and charged back.

66. The Defendants have benefitted at Cayan's expense and equity and good conscience require Cayan be paid restitution.

## COUNT V:  NEGLIGENT SUPERVISION
### (Against All The Way Up)

67. Cayan incorporates by reference as if fully set forth herein each of its allegations set forth above in Paragraphs 1 to 66.

68. Plaintiff is informed and believes that Spina was an employee of All The Way Up.

69. Plaintiff is informed and believes that Spina collected confidential credit card information of certain All The Way Up customers while associated with All The Way Up.

70. Plaintiff is informed and believes that All The Way Up knew, or in the exercise of reasonable care, should have known of Spina's propensity for fraudulent conduct at some point prior to Spina making unauthorized charges in or around December 8, 2016 through January 9, 2017.

71. Notwithstanding this knowledge, All The Way Up, through its acts and omissions, failed to secure confidential customer credit card information, continued to allow Spina access to that information, failed to supervise or control Spina in his use of that confidential credit card information, and failed to prevent unauthorized charges on its customers' credit cards in connection with All The Way Up's commercial activity of carrying on its sales business.

72. As a result of All The Way Up's negligence, Spina was allowed to perpetrate fraud by making unauthorized charges to credit cards of multiple All The Way Up customers.

73. As a result of the foregoing, Cayan has been damaged.

## COUNT VI:  VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") 18 U.S.C. § 1962(c)
### (Against All Defendants)

74. Cayan incorporates by reference as if fully set forth herein each of its allegations set forth above in Paragraphs 1 to 73.

75. At all material times, Defendants were an enterprise within the meaning of 18 USC § 1961(4) engaged in activities which affect interstate commerce.

76. Plaintiff is informed and believes, at all material times, Defendant Spina was

associated with the enterprise within the meaning of 18 USC § 1962(c).

77. Plaintiff is informed and believes, at all material times, Defendant Spina was associated with and acted on behalf of and in concert with All The Way Up.

78. Defendants participated directly or indirectly in the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 USC§ 1961(1) and (5) by committing since December 8, 2016, two or more offenses in furtherance of a scheme to defraud Plaintiff including mail and wire fraud and the use of other instrumentalities of interstate commerce in aid of their fraudulent activities.

79. From on or around December 8, 2016 through January 9, 2016, Spina and/or All The Way Up retained credit card information from valid sales made to UP NYC customers or obtained through other means, and subsequently, using means of mail and/or wire, made at least 30 unauthorized charges on credit cards of those Cardholders, at least one of whom was out of state, using All The Way Up's Account.

80. As a result of Defendants' participation in the conduct of a pattern of racketeering in violation of 18 USC § 1962 (c), Plaintiff suffered damages in an amount in excess of $318,815.45 to date.

81. By reason of the foregoing and pursuant to 18 USC § 1964, Defendants are liable to Plaintiff for the amount of its loss, trebled, plus the costs of this action, including attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, by virtue of the acts complained of above, Cayan respectfully requests that the Court grant judgment as follows:

    a. for monetary damages of at least $318,815.45, or such other amount as determined to be owed, plus fees and interest as set forth in the Agreement;

    b. for trebled damages;

    c. for attorneys' fees and costs;

    d. for pre- and post-judgment interest; and

    e. for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
   February 15, 2017

              Respectfully submitted,

              ORRICK, HERRINGTON & SUTCLIFFE LLP


              By:   */s/ Richard A. Jacobsen*

              Richard A. Jacobsen
              Email: rjacobsen@orrick.com
              Shaila R. Diwan
              Email: sdiwan@orrick.com
              51 W. 52nd Street
              New York, New York 10019-6142
              Tel: (212) 506-5000

              *Attorneys for Plaintiff*
              *Cayan LLC*